IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| Robert Lee Jenkins, | ) | |
|---|---|---|
| | ) | Civil Action No. 8:09-3293-RMG-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| South Carolina Department | ) | |
| of Corrections, Gregory | ) | |
| Knowlin, Warden Turbeville | ) | |
| Correctional Institution; Sherri | ) | |
| Scott, Sergeant TCI; Nurse | ) | |
| Garrett, TCI; and Angelia R. | ) | |
| Brown, Hearing Officer, TCI, | ) | |
| | ) | |
| Defendants.[1] | ) | |
| | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Before the court is the Defendants' Motion for a Summary Judgment. (Dkt. # 53.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983, and submit findings and recommendations to the District Court.

---

[1]The undersigned notes that Dr. J. Kay was recently dismissed as a defendant by United States District Court Judge Richard M. Gergel. (Dkt. # 84.)

The Plaintiff brought this action on December 21, 2009, seeking damages for alleged civil rights violations.[2] (Dkt. # 1.) On June 11, 2010, the Defendants filed a Motion for Summary Judgment. (Dkt. # 53.) On July 12, 2010, the Plaintiff filed a response opposing the motion. (Dkt. # 56.)

**FACTS**

The Plaintiff is an inmate currently incarcerated at the Evans Correctional Institution ("ECI"). At the time of the allegations in his complaint, the Plaintiff was incarcerated at the Turbeville Correctional Institution ("TCI"). Liberally construing the Complaint, the Plaintiff alleges constitutional claims of excessive force, deliberate indifference to serious medical needs, denial the right of access to the courts, retaliation, and conspiracy.

Specifically, the Plaintiff alleges that on August 24, 2008, two officers shook down his cell and confiscated the Plaintiff's extra blanket and gloves. (Compl. at 5.) The Plaintiff suffers from scleroderma and Raynaud's Syndrome.[3] The Plaintiff alleges he tried to explain to the officers that due to his medical conditions, he needed the blanket

---

[2]As there was not a prison mailroom date stamp, the undersigned is using the date on which the envelope containing the complaint was postmarked. (Compl. Attach. # 11.) *See Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court)

[3]Scleroderma is a chronic connective tissue disease generally classified as an autoimmune disease. (*See generally:* www.scleroderma.org) (last visited Nov. 23, 2010.) The word "scleroderma" is derived from the Greek words: "sclero" meaning hard, and "derma" meaning skin. Hardening of the skin is one of the most visible manifestations of the disease. *Id.* Raynaud's Syndrome a condition that causes the extremities to feel numb and cool in response to cold temperatures or stress. (*See generally* www.mayoclinic.com/health/raynauds-disease) (last visited Nov. 23, 2010.)

and gloves. *Id.* The Plaintiff states that he refused to give the officers the glove he had on his hand and he was taken to speak with the captain. *Id.* The Plaintiff states he explained the situation to the captain and he refused to give them the glove. *Id.* He states he was then be placed in a holding cell and ten minutes later eight or nine officers entered his cell with gas shields and demanded the glove. *Id.* The Plaintiff alleges he broke down and gave the glove to one of the officers and asked him to check his medical records. *Id.*

In his Supplemental Complaint, the Plaintiff alleges that he was taken to medical and given a pass to retain the right hand glove until he could be seen by a doctor. (Dkt. # 19 - Supp. Compl. at 1.) He states he was called to medical on the same day and given a pass to keep the glove, but that he was not seen by the doctor that day. *Id.* at 1-2.

The Plaintiff also alleges that the Defendant Scott maced him and, due to his medical condition, she exposed him to a life threatening situation. (Compl. at 6.) Although it is not clear from the Complaint, the incident report attached as an exhibit to the Complaint, establishes that the Defendant Scott maced the Plaintiff in the cafeteria on February 2, 2008. (Compl. Attach. # 2 and 12.) Scott states in the incident report that the Plaintiff refused to wear his identification card despite several directives. *Id*. Further, in the incident report, she states that the Plaintiff said he did not have to wear his identification card and he pushed his right hand onto Scott's shoulder. *Id.* Scott states she administered a quick burst mace using three grams. *Id.*

In his Complaint, the Plaintiff acknowledges he did have his identification card in his jacket pocket and that, due to the Raynauds, he was unable to use his hands to remove it to show Scott. (Compl. at 6.) Further, the Plaintiff alleges that the Defendant Nurse Garrett was grossly negligent for failing to wash off the mace. (Compl. at 6.) The Plaintiff also alleges that he tried to explain his condition to Dr. J. Kay, but Dr. Kay ignored him. *Id.*

As a result of this macing incident on February 2, 2008, the Plaintiff was charged with assaulting an employee without a weapon. The Plaintiff alleges he was placed in administrative segregation for 45 days and was exposed to severe cold which caused him great pain. (Compl. at 5; Compl. Attach. # 12 at 19.) He states that once his medical conditions were discovered, the charges were dropped, but he still maintains he has not been provided with appropriate medical care. (Compl. Attach. # 12 at 20.)

On October 28, 2008, the Plaintiff was charged again with assaulting an employee and he was sanctioned with the loss of sixty days of good time credit and placed in administrative segregation. (Compl. Attach. # 12 at 20; Defs' Mem. Supp. Summ. J. Mot. Attach. # 4 - Ex. B.) The Plaintiff alleges that he was charged in retaliation and he appealed the charge. (Compl. Attach. # 12.). The Plaintiff was charged a third time with assaulting an officer on May 8, 2009. (Compl. Attach. # 12; Defs.' Mem. Supp. Summ. J. Mot. Attach, # 4 - Ex. D.) The Plaintiff was found guilty and sanctioned with the loss of ninety days of good time credit and 180 days of telephone, canteen, and visitation privileges. *Id.*

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which

give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**DISCUSSION**

As an initial matter, the undersigned notes that the Plaintiff filed a 134-page attachment along with his memorandum opposing summary judgment.[4] However, the Plaintiff's Memorandum Opposing the Defendants' Summary Judgment Motion does not contain any citation to the relevant pages of the 134-page exhibit. It is not the Court's responsibility to sift through exhibits to determine how they might support a party's claims. While the general rule is that pro se pleadings must be construed liberally, this rule has limits and the court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." See *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Accordingly, the undersigned will not peruse the Plaintiff's exhibit to determine sua sponte if those pages contain some additional support for the Plaintiff's arguments which he makes in his memorandum.

---

[4]The exhibit is a self-described running log of events which the Plaintiff states he prepared during the time the events set forth in the complaint allegedly occurred.

**Exhaustion**

The Defendants contend that the Plaintiff did not exhaust his administrative remedies on the claims relating to the incident on February 3, 2008, before filing this action. The undersigned agrees.

Exhaustion of administrative remedies prior to bringing a federal lawsuit is required by 42 U.S.C. § 1997e(a) (stating "No action shall be brought with respect to prison conditions under Section 1983 of this Title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). A prisoner has not exhausted all of his administrative remedies by "failing to follow the required steps so that remedies that once were available to him no longer are." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion requires that the prisoner utilize all available procedures so that prison officials have the opportunity to remedy the situation administratively. *Id.*

In order to exhaust the South Carolina Department of Corrections ("SCDC") administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate

Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under § 1983. 42 U.S.C. § 1997e.

Here, the Defendants contend that the Plaintiff has not filed a grievance related to the claims the Plaintiff raises in his complaint. (Defs.' Mem. Supp. Summ. J. Mot. at 5.) The record shows that the Plaintiff never filed any grievances regarding the macing incident or his disciplinary charges stemming from the February 3, 2008 incident or his medical treatment following the incident. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 7 - Aff. of James Simmons Ex.) Accordingly, it is recommended that the claims relating to the February 3, 2008 incident be dismissed for failure to exhaust. *Blakely v. Tatarsky*, 2009 WL 2922987 * 5 (D.S.C. 2009). Alternatively, the undersigned finds the Plaintiff's claim fail on the merits as discussed below.

**Excessive Force Claim**

The plaintiff alleges the Defendant Scott used excessive force when she sprayed him with mace on February 2, 2008. The Defendants contend the plaintiff has failed to state a claim for excessive force. The undersigned agrees.

The Eighth Amendment prohibits those who operate prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994). An inmate's Eighth Amendment claim involves a subjective component and an objective

8

component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id*.

To prove the subjective component, a plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Whitley v. Albers,* 475 U.S. 312, 321(1986)).

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Hudson v. McMillian*, 503 U.S. 1, 6 (1992)(internal quotation marks omitted). Thus, the issue is not whether the use of force was absolutely necessary in hindsight, but "whether the use of force could plausibly have been thought necessary, or instead evinced such

wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321.

The objective component of an excessive force claim is not nearly as demanding, however, because " '[w]hen prison officials maliciously and sadistically use force to cause harm' . . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " *Wilkins,* 130 S.Ct. at 1179 (internal quotations omitted).

Furthermore, the absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy,* ---U.S. ----, ---- - ----, 130 S.Ct. 1175, 1178-1179, (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins,* 130 S.Ct. at 1178. However, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 1178-79.

There is no dispute that the Defendant Scott used force against the Plaintiff when she sprayed mace on the Plaintiff in the cafeteria, but the issue is whether Scott used excessive force. The Fourth Circuit has closely scrutinized the use of tear gas or mace in correctional facilities. The use of mace or pepper spray by prison officials is not in and of itself a per se violation of a prisoner's constitutional rights when used appropriately. *Williams v. Benjamin,* 77 F.3d 763 (4th Cir.1996). The Fourth Circuit has held that

> mace can constitutionally used in small quantities to prevent riots and escapes, or to control a recalcitrant inmate. . . . A limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.

*Id.* at 763 (quotations and citations omitted). However, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment," as "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.' " *Id.* (*quoting Slackan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984)).

Here, it is undisputed that the Plaintiff failed to take his identification card out of his pocket to show the Defendant Scott despite being ordered to do so. The Plaintiff alleges he did not push Scott. However, the Plaintiff does acknowledge that because of his medical condition, he may have appeared threatening to someone not familiar with his disease. (Compl. Attach. # 20 at 18.) Assuming the Plaintiff did not push Scott for the purposes of this report, the undisputed evidence is that the Plaintiff failed to follow

11

directives and he appeared threatening to Scott.[5]  In any event, there is no evidence that Scott maced the Plaintiff "maliciously and sadistically to cause harm." From her perspective, Scott was attempting to control an uncooperative inmate. (Defs.' Mem. Supp. Summ. J. Mot. Attach. #11- Scott Aff. ¶ 7.) Furthermore, there is no evidence to show that the amount of chemical spray used on the Plaintiff was excessive. To the contrary, the evidence shows that the amount used, 3 grams, was very small. *Plummer v. Goodwin,* 2010 WL 419927 at * 7 n. 4 (D.S.C. 2010) (holding that 33.50 grams of chemical munitions used on Plaintiff was "a relatively small quantity and not constitutionally relevant."); *Townsend v. Anthony*, 2006 WL 2076920 at * 9 (D.S.C. 2006) (finding 20 grams to be a small amount).

Further, while being sprayed with a chemical spray is no doubt uncomfortable, there is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether the Plaintiff suffered a significant injury. *Strickler v. Waters,* 989 F.2d 1375, 1380-1381 n. 9 (4th Cir.1993) (holding mere incantation of physical and mental injury, of course, is inadequate to survive a motion for summary judgment); *cf. Bell v. Wolfish,* 441 U.S. 520, 540 (1979)[holding "not every malevolent touch by a prison guard gives rise to a federal cause of action"). Although the Plaintiff is not required to show that he suffered more than a de minimis injury to maintain his excessive force claim, the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. *Wilkins,* 130 S .Ct. at 1179-1180 (holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or

---

[5]The undersigned also notes that the Plaintiff is 6'3" tall. (Pl.'s Mem. Opp. Summ. J. at 1.)

shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim")(internal citations omitted). Here, the Plaintiff has failed to produce any evidence showing a discernible injury, other than the normal aftereffects associated with the use of mace.

After considering the *Whitley* factors, the record, and all inferences in a light more favorable to the Plaintiff, the evidence does not support a reliable inference of wantonness, and thus, the Plaintiff fails to show that the Defendant Scott's conduct violated his constitutional right. The evidence does not support a reliable inference of wantonness because Scott's use of force was plausibly a good-faith effort necessary to maintain or restore discipline and does not indicate an express malicious or sadistic intent to punish the Plaintiff. Based on the foregoing, the Plaintiff's excessive force claim should be dismissed.

**Medical Indifference Claims**

The Plaintiff alleges that after the Defendant Scott sprayed him with mace in February, 2008, the medical staff denied him medical care by refusing to wash the mace off him. Further, the Plaintiff alleges the Defendants have been indifferent in their treatment of his scleroderma and Raynaud's Syndrome. The Defendants contend that the Plaintiff has failed to state a claim of medical indifference. The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id*. The duty to attend to prisoners' medical needs, however,

13

does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id*. at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Further, mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. *Estelle,* 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); *see also Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

The undersigned finds that the Plaintiff suffers from a serious medical condition, Raynaud's Syndrome and scleroderma. *See Russell v. Mounsey*, 1998 WL 456434 (N.D.Ind. 1998)(unpublished)(finding Raynaud's Syndrome is a serious medial need). However, there is no evidence that the Defendants denied him medical care. Reviewing the Plaintiff's medical records, it is clear the Plaintiff has received extensive general medical care and he has also been treated specifically for Raynaud's Syndrome and scleroderma. *See Alsina-Ortiz v. Laboy*, 400 F.3d 77 (1st Cir. 2005)(holding doctor's

failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment.)

At best, there may have been a delay in medical staff diagnosing the Plaintiff and in the non-medical staff being informed of the Plaintiff's medical condition and in washing off the mace from the Plaintiff on February 3, 2008.  However, there is no medical evidence in the record that any such delays resulted in any injury to the Plaintiff.  *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188-1189 (11th Cir.1994) (holding "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"). The medical evidence fails to show that the Plaintiff suffered any significant injury and this claim is therefore subject to dismissal. *Green v. Senkowski*, 100 Fed.Appx. 45 (2d Cir.2004) (unpublished opinion) (finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim);  *House v. New Castle County,* 824 F.Supp. 477, 485 (D.Md.1993) (holding plaintiff's conclusory allegations insufficient to maintain claim).  Accordingly, based on the foregoing, the Plaintiff's medical indifference claims should be dismissed.

**Conspiracy Claims**

The Plaintiff alleges the Defendants have conspired against him.  The Defendants contend the Plaintiff has failed to state a conspiracy claim.  The undersigned agrees.

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that

the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996). Thus, an essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *Ballinger v. N.C. Agric. Extension Serv.,* 815 F.2d 1001, 1006-07 (4th Cir. 1987). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir. 1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff. *Am. Tobacco Co. v. United States,* 328 U.S. 781, 809-10 (1946).

When a complaint makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okla*., 866 F.2d 1121, 1126-27 (9th Cir. 1989); *Cole v. Gray,* 638 F.2d 804, 811-12 (5th Cir. 1981). Reviewing the Plaintiff's Complaint, the undersigned concludes that the Plaintiff fails to allege any facts indicating that the Defendants acted jointly to injure him, and his conclusory allegations are insufficient to state a claim upon which relief may be granted. Accordingly, the conspiracy claim should be dismissed.

**Retaliation Claims**

The Plaintiff alleges the Defendants have retaliated against him for filing claims. The Defendants contend the Plaintiff has failed to state a retaliation claim. The undersigned agrees.

To state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id. at 74. An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. *See, e.g., Cochran v. Morris,* 73 F.3d 1310, 1318 (4th Cir. 1996). An inmate must also allege facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights." *Am. Civil Liberties Union of Maryland, Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran*, 73 F.3d at 1317; *Adams*, 40 F.3d at 74.

To the extent that the Plaintiff contends that the retaliatory conduct was the result of filing a civil action with the court, he has failed to assert facts showing that the alleged retaliatory actions taken by the Defendants violated a constitutional right. The United States Court of Appeals for the Fourth Circuit has made clear that a prisoner claiming retaliation for filing a civil suit must allege sufficient facts to indicate that the alleged retaliation resulted in some adverse impact to his right of access to the courts. *See Am. Civil Liberties Union of Maryland, Inc.,* 999 F.2d at 785; *see also Cochran,* 73 F.3d at 1317 (finding that an inmate must "identify actual injury resulting from official conduct,"

and "trivial claims of deprivation" are not actionable). The Plaintiff has not done so here. There is no allegation that the Plaintiff has suffered any actual injury.

**Denial of Access to the Courts Claim**

To the extent that the Plaintiff is alleging a claim of denial of access to the courts, the undersigned finds he has failed to state a claim.

Prisoners have a right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 828 (1977). The right of access to the courts is protected by the Due Process and Equal Protection Clauses. *Murray v. Giarratano*, 492 U.S. 1, 11 n. 6 (1989). In *Bounds v. Smith,* 430 U.S. 817 (1977), the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id.* at 828. In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996).

"[A]n inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions." *Cyrus v. U.S. Marshals of Columbia*, SC, 2007 WL 601610, *4 (D.S.C. 2007). He must establish a specific prejudice stemming from the denial of the item. *Id.* In order to plead

a denial of access to the courts claim, a plaintiff must identify with specificity a non-frivolous legal claim that he was prevented from litigating by the defendants' actions. *Lewis*, 518 U.S. at 351-53 & n. 3.

The Plaintiff has failed to allege any actual injury related to his allegations that the Defendants interfered with his access to the courts. Accordingly, the Plaintiff has failed to state a claim of denial access to the courts.

## CONCLUSION

Accordingly, based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment (Dkt. # 53) be GRANTED and the Complaint be dismissed with prejudice.

IT IS SO RECOMMENDED.

S/Bruce Howe Hendricks
United States Magistrate Judge

December 2, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page**.